Good morning. I'm Mark Evans, or Paul Evans. Paul and I jailed in Fitts and the Perfumes Clause, and running for its trustee as the Chief of the Court. There are three bases under Rule 16b that would divide the District Court to set aside for dismissing this case with breaches. The first base is under Rule 16b-3, which provides for a misstatement by counsel, or it's misstated by a close counsel. Okay, well, we gave you the farm, and your clients were going to be required to sign for it. So I don't see how there's any cases for fraud under here. Well, the fraud is under Rule 16b-3. There's none of that. It's not necessary to file a defraud. So I don't see any misconduct about any sort of misstep. This is the farm that you've been required, and your client signed, and your counsel said, okay, we'll deal with it. The actual record shows, and very little, actually, that there's... Ours shows the farm being transmitted to your client's farm. It's the farm of a private cause. And you have the very provision that you're now complaining about in it, and the other side said, are we good? Is this going to be acceptable on your client's farm and whatever's the difference? Sure, and May 15th, you know, it didn't actually say, here is the fraud-crossing agreement. This is the one we're going to be adopting. But it said, it's the exact same one. I'm saying that the one they sent had the very provision  or misconduct, right? Sure. And subsequent to receiving that form, the parties negotiated, and they negotiated as to what that crossing would be. It's the former counsel's... His affidavit says that all his negotiations, all of his discussions was, this is going to be a permanent crossing. It wasn't going to be an easing agree. He would amend and change and alter whatever form version they were using in that time. One of the material provisions was, it would be a permanent crossing. If the cross was going to do a zero-zero, does it mean that he actually read the form document? That was a little unclear to me. He certainly had time to read it if he looked at it. Sure, and I'm a little unclear on that as well, and that was why I was like, well, there's a danger here. It could get too long, I thought, because, like I said, I don't think that replaces me at all as a former prison lawyer. Why did he agree to sign this stipulation and dismiss it with prejudice before he actually had a signed settlement agreement that would have clarified all these terms? Why couldn't they have gone in to the district judge and said, look, we have an agreement in principle here, but we're not willing to dismiss with prejudice because we don't yet have an age settlement agreement. We have 60 days. We do it all the time. I've never entered into a settlement agreement where you show me yours, I'll show you mine, and we'll do it together. I'm perplexed. I don't have an answer for you. I've asked that question. I've asked that question on both consulting. I've asked that question at a teacher program. I've asked that question to virtually every attorney that I've run into and discussed these cases. Why in the world would anybody do this? That's the question. What was the best answer here? The best answer I got from Mr. Kroger and from Mr. Campbell when I first was brought in was, why in the world is anybody thinking about dismisses with prejudice? So what Mr. Campbell determined, as our call told me, was rough terms. And they said, well, the judge, Judge Martone, he told them, trial coming in five days. I don't think the trial was dismissed with prejudice. And so they were dismissed with prejudice. But there's nothing in the provision, even in the proposed stipulated order, that permits the district court to retain jurisdiction in the event that there's a, we've all had it happen to us, you know, a change of heart by the clients or counsel don't realize that there's a clause that should have been more tightly hammered down. And so the district court retains jurisdiction to resolve those kinds of issues. There's nothing like that here. I mean, at this point, mostly the only remedy is to file some sort of a speed breacher contract action. It's based on the contract with the lawyer. It's based on the contract with the lawyer as to gross negligence. I think so. I'm not sure we've called it gross negligence. I didn't know that. I didn't disagree with that characterization. It's negligence, I think. It might be malpractice. Although I take it no malpractice, I think it's never been filed because there's too many charges. I haven't been part, I'm not party to that. I believe some demands or some things going on, but I'm not party to it. The other problem I have, Mr. Nicolou, is that, you know, your clients waited over a year after all of this happened, before they came back, and asked the district court to set it aside. And if we're reviewing under a differential abuse of discretion standard, can't the court factor that into the decision where you just stipulate a dismissal when the client says, you know, you're back here, you waited a year, you're supposed to come in two weeks later to say, Your Honor, we thought we had a deal, but this thing is going to go sideways. The problem with that is that I don't hold that to a blind eye to make sure you know what happened. They actually had, for a very brief time, Mr. Grover call at least Mr. Fick, this matter about the time, and said, Union Pacific has agreed to what you do when you have a crossing. That's it. That's it about dismissal for enforcing that there was a trial date, and that no trial ever occurred. They knew that a trial wasn't going to happen, and then there's a crossing back. That's it. Here's the problem. Here's the big issue. And I don't think I said to you that I would like to reserve two minutes. The huge problem with this is Mr. Grover didn't have a settlement authority under Arizona law, under federal law. Attorneys don't inherently have authority to settle matters of poison. That's why he called Mr. Fick. Mr. Fick wasn't a trustee of the trust. He wasn't a beneficiary of the trust. Are you saying that there were no communications at all between Mr. Grover and your clients as to what was going on at the time of the trial? It looks like the trust had no communication with Mr. Grover. Mr. Grover was told to communicate with Mr. Barrett, who had a letter turning back from Barrett saying, we got a phone call from Mr. Grover while he was on his way to accident repair. That's a fact. And you say there's no communication. No, that's a fact. But you're saying that they waited several months because they didn't know what had happened, but there were contemporaneous, at least phone conversations. I didn't see anything in the record in writing where the lawyer sent a letter to the client saying that there isn't any evidence that he sent them the evidence. I asked him, he said, here's the point, that there was communication, solely as to, hey, guess what? I got a crossing back. This land is no longer landlocked. And, you know, I've been addressed. He addressed that property. Let's take a look. It's dismissed with prejudice. I read something in the record that there is a way to access the property, but it involves driving across the woodhouse. That's the merits of the dispute, and that's what the trial was going to be about. Okay. So whether or not it's landlocked is still sort of up to the... It is evidence that has some merits. I don't know who merits the law that's going to speak to that now, except that because of what Mr. Grover did, my clients never got to keep their case to trial. They will not have a permanent crossing, and they'll never have an opportunity to get a permanent crossing, because of what he did. He lacked authority to do it. No one told him that he could dismiss the case with prejudice and not take the normal precautions of allowing the judge to retain jurisdiction. And this is again similar to cases that this court asked us to review, one of them being the Barnab case, where the attorney didn't have some authority to offer to on the stipulated judgment for the $650,000, about 650 letters that were going to go out, and were costed $540,000. He had only consented to $9,000. And the court there said it's dubious to think that they would have agreed to that. It's dubious here that our client, my client, would have agreed to a crossing that could be removed at any time for any reason. And it's dubious to think that any attorney would agree to dismiss a case with prejudice without an actual solver in place. Okay? Thank you. Thank you. Good morning, Your Honor. My name is Reed Campbell, and I represent Union Pacific Railroad Company. The new fixed trustee asked this court to set aside a judgment and a settlement made freely by the previous trustee. If you could just skip over to the first row and talk about it. I'm sorry. I'm sorry. And let me just follow up on a point that you asked about earlier. Before I jumped into it, you asked a question about whether or not there was a settlement agreement. The May 15th email, by incorporating the private crossing agreement, is the four corners of the parties' agreement. So there was nothing further to negotiate than is the agreement. The crossing agreement, as it is then modified by that May 15th email with the parties coming over for a full settlement agreement or incorporated as they see fit, that is for the form of the agreement. Union Pacific has seen hundreds of these, thousands of them throughout the system. So having an agreement that is incorporated into an email, the formal agreement, as I'll call it, would just be rewording that into a single document so that it could be filed with an insistence. In essence, I read that email as an enjoined agreement that these are the key terms of our settlement. And then the parties, for example, would contemplate if they would be memorialized in a more formal settlement document, which it means they use the words of nations that parties consider. Exactly right. And then it would also be contained within the four corners of that fragment of the crossing agreement. That would be incorporated by a settlement within an appendix or something to the settlement agreement. Yes, Your Honor. I'd like to address... There's one thing. I'm sorry, what was your question, Pat? Nothing. Just in terms of the reasoning. Okay. The B6 grant, this Court has passed about three cases involving apparent authority between an attorney and a client. And I think all three of those cases are clearly distinguishable from the facts in this case. The Gomez versus City of New York case, for example, the Second Circuit remanded the case when the client... When the attorney dismissed it without his knowledge, he included each other's story about the specifics of each case, which is a general principle. Is it true that if an attorney lacks the authority to settle on behalf of the client, that that is a ground for the client to come in and ask for relief under B6? It depends if they lacked the authority to negotiate at all. And that's not the case here. What the trust is truly objecting to is the terms by which the attorney and the client ultimately agreed so they had held him out there. It gave him the apparent authority to negotiate. And if he negotiated claims with various terms with different legal consequences, then they contemplated, or as their attorney explained to them, that does not release them from the settlement. That gives them a claim against their attorney for failing to do his job in explaining the legal ground for cases of their settlement. And they are alleging that if they ever authorized settlement of any sort, that they were going to insist upon a trial and that this lawyer was never given the authority to negotiate anything. Your Honor, that's... Geraldine Fix, Paul Fix, and anyone who is involved in the decision-making process at that time cannot present any evidence to the district court. What you're referring to is the subsequent trustee's affidavit. Certainty that Geraldine Fix, Paul Fix, or Geraldine Fix of certain capacity as trustee didn't provide authority, they could have presented that evidence to the district court. They submitted about four or five affidavits. None of the likes were from the client at the time or the trustee at the time. But I thought your... I thought their position is that as of today, we're talking about a case of Geraldine and perhaps Paul were no longer legally competent to submit anything. That's the argument that they've made, but there has been no determination in this case of legal incapacity. But may I make one quick point? The trust also took steps recognizing her authority to continue as trustee. She was involved in the decision to fire her previous counsel. She was involved in the decision to transfer the trustee to her son, Darren Morehouse. And so even after the settlement of May, she was still taking steps actively on behalf of the address. No, I hear you on that. I just... What I'm struggling with is that I gather from the cases that were referred to in that order and other cases that if there's a factual dispute on this question, it's not something that the district court can resolve without ultimately the interior talk around talking about sending it back what direction to deal with it, but rather just taking the judgment so that the interior can be held. Because I'm trying to figure out why would that not be the right result? It wouldn't be the right result because they haven't challenged the authority to negotiate their intention is to the terms. And after an exchange there's a difference. I mean, there's a big difference between authorizing a lawyer to commence settlement negotiations and then the separate question of will the client accept the terms that the lawyer has negotiated. And as I read the record, they're now saying we never authorized Mr. Grover to settle on these terms. Well, Your Honor, I would usually let your correspondence be there in council where, for example, in this record 138, the letter from September 25th, they set out the terms as they understand, we understand that the parties selected to be crossing. We understand that the parties have agreed that they shall have a one-time right of assignment recognizing the limited nature of the trust. So they have recognized these terms. The issue of whether he had authority didn't come up, as the court noted, for nine months after the parties reached the settlement agreement and only after the railroad refused to reopen negotiations and held them to their agreement. But also, I think it's important that the court recognizes that this is an issue that would be addressed under Arizona law and the Robertson lawyers might only take this Mr. Grover's authority to apply it to other parties. I submitted a citation of supplemental authority in case his... You said that... I know you cited it I think it was on the Supreme Court case, was it? Yes, but I'll ask you after 60 minutes. Yes, and in addition to citing that Robertson case, I cited a case called Backman v. District Court of Columbia and that case expressly held that when determining the scope and authority of an agency relationship between attorney and client, it's a matter of local law. And that's not necessarily right. And I think we have a case in the east end of Virginia that we can send to the court or send it to the question by the state or federal public conference. I'm not sure why I would send it but we're looking for a solution. But the district court is being asked to deal with this in sequence to decide whether in the exercise of its equitable discretion it should agree to refuse a judgment in the end. So if it determined that this lawyer didn't have the authority to settle all the terms of the claims, to define the claims, why would they not have the authority under state law to do so? I think the injustice is occurring and I'm not going to worry about it. To address your question on why local rule would apply that much, the case addressed that question and it said to give lawyers practicing within that same uniformity when they're entering into agreements in a federal case or a state case if there's different standards you can create confusion within the practice on the scope of their authority. So that's the reason that the Court gave in the Ninth Circuit is to address that issue as well and in this situation since, unlike Gomez or Michaud which we're dealing with federal questions, this is a diversity case and so state substantive law should apply not just because of the diversity but also the reason that I gave you previously. Thank you. If I could just briefly talk about the Robertson case because I think it is applicable here. That's a 2015 case and in that case the Court held a party to a settlement agreement when the attorney made the agreement with the sunset provision with, made the offer with the sunset provision of 48 hours. The offeree asked for additional time. The client denied it but the attorney didn't want to extend the additional time. So they then withdrew that authority. The Court held them to that agreement even though the client had stated we're no longer giving you any authority to settle because they had taken that, held them out there to negotiate. The attorney, or the client was bound by the attorney's settlement and that's the same case here. They held them out to negotiate. They recognized both by not showing up at the trial or showing up at the June 6, 2014 meeting where a new crossing was selected, a condition that was only necessary because of the settlement. They recognized it in all of their, their correspondence following the settlement, recognizing that at one point they said they want the agreement that they bargained for. How can you demand the agreement you bargained for and then say you didn't give any authority to bargain to other people if they're understanding what the settlement was? If they understood that the settlement was something different than what was transferred over inside OFA, there's a way to go ahead to the question of whether they were fully informed and authorized to enter into that settlement. Well, I don't, it's not just being they authorized into a settlement. What the charges and the consequences of that settlement was doesn't destroy his authority. If he exceeded his authority, then that's an issue that would be a claim between the trust and their former counsel for not providing the competent representation that doesn't eliminate that authority, especially when there's no, all the conduct that was manifested to my client shows that that relationship existed and existed for nine months until the first time they started, they challenged their ability to create a case and that's really where these cases you cited are clearly distinguishable and all of those cases, the attorney or the client with it dates or is pumped in arms writing letters to the judge taking every single step. Here, you have the parties working business settlement is agreed upon meeting taking steps to advance the agreement and it's not something that's stated on the next issue's first page. Okay, let me make sure I understand the record because I guess I thought within a very short time after one of the former lawyers was replaced, right, it took a while, he was trying to fix things, it took a while before the fixes discharged and they got new counsel and I thought it was very soon after new counsel came in because they gave us all the documents on how you could get them from the former lawyer, very soon after they got them they said, oh, no, no, no, the New Counsel client never authorized this. You're right it took a while before they went to the court but they made very clear to you as soon as the new counsel found out what it was supposed to be. And they were very clear about       very clear about what it was supposed to be. And they were very clear about what
judges: Tallman, Watford, Guirola